**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

> Plaintiff,

vs.                                                             No. CR 09-2439 JB

JOSEPH MARTINEZ,

> Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on the Defendant's Appeal of Detention Order and Motion for Release, filed September 9, 2009 (Doc. 16)("Motion"). The Court held a hearing on October 14, 2009. The primary issue is whether the Court should vacate the detention order entered on August 28, 2009 by the Honorable Robert Hayes Scott, United States Magistrate Judge for the District of New Mexico. See Detention Order Pending Trial, filed August 28, 2009 (Doc. 11). Because Defendant Joseph Martinez has failed to rebut the presumption in favor of detention found in 18 U.S.C. § 3142, and because the United States has shown that Martinez is both a danger to the community and a flight risk, the Court will deny Martinez' motion for release and uphold Judge Scott's order of detention.

## FACTUAL BACKGROUND

Martinez is currently charged with two counts of violating 18 U.S.C. §§ 2251(a) and 2256 -- Production of a Visual Depiction of a Minor Engaging in Sexually Explicit Conduct. See Indictment at 1-2, filed August 25, 2009 (Doc. 1). The charge stemmed from a 911 call from Martinez' residence that was an open line -- a 911 call where the dispatcher hears nothing but static on the caller's end of the line, and then the call ends. See United States' Response to Defendant's Appeal

of Detention Order and Motion for Release ¶ 2, at 1-2, filed September 11, 2009 (Doc. 19)("Response"). When police responded to this mysterious call, they entered the house and found "a camcorder with tripod setup, stacks of Polaroid photographs showing a young teenage white male sitting in a chair receiving fellatio from an older Hispanic male, dozens of children's toys, and a large quantity of marijuana scattered throughout the residence." Response ¶ 2, at 1-2.

Before the officers applied for or received a search warrant, Martinez allegedly spoke to them, and they advised him of his <u>Miranda</u> rights. <u>See</u> Response ¶ 3, at 2. Martinez allegedly admitted that the officers would find marijuana and cocaine in his house, that he had "dozens of pornographic VHS tapes, and as many as four (4) that involved him having oral sex with a 16 year old." <u>Id.</u> He also allegedly lied to the officers about the name of the minor involved and showed no remorse, referring to his conduct as "mentoring" the minor. <u>Id.</u> Upon obtaining and executing a warrant to search Martinez' residence, officers found "multiple bindles [sic] of marijuana, cocaine, hundreds of VHS and 8mm videos, and photographs of [Martinez] masturbating and performing fellatio with a young male approximately 14 to 16 years of age." <u>Id.</u> ¶ 4, at 2-3. Among those videos seized, approximately twenty-two depicted Martinez "engaging in various sexual acts, including oral sex and anal digital penetration of a male under the age of 18." <u>Id.</u> ¶ 5, at 3.

The officers were able to identify one of the victims portrayed in Martinez' videos ("John Doe"). John Doe allegedly admitted that Martinez began sexually molesting him when he was five-years old and continued to do so until John Doe reached the age of sixteen. <u>See id.</u> ¶ 6, at 3-4. John Doe further described how Martinez "would force sexual advances upon him, remove his clothing, and perform various sexual acts for this eleven (11) year period." <u>Id.</u> The abuse allegedly occurred at multiple residences located throughout Albuquerque, New Mexico. <u>See id.</u>

On April 4, 2009, New Mexico state authorities arrested Martinez and on August 6, 2009,

he was indicted on: (i) forty-five counts of Criminal Sexual Penetration of a Child; (ii) Possession with Intent to Distribute Marijuana; (iii) Possession of Drug Paraphernalia; and (iv) Possession of Cocaine.  See Memorandum from Andrew F. Selph, Senior United States Probation Officer, to the Court (dated September 17, 2009), Attachment A ("Bail Addendum").  Those charges are still pending before the New Mexico District Court for Bernalillo County.  See Bail Addendum Attachment A.  The New Mexico District Court then released Martinez on a $225,000.00 bond.  See Motion ¶ 3, at 1.

## PROCEDURAL BACKGROUND

A federal Grand Jury indictment has now charged Martinez with two counts of Production of a Visual Depiction of a Minor Engaging in Sexually Explicit Conduct, in violation of 18 U.S.C. §§ 2251(a) and 2256.  See Indictment at 1-2; Response ¶ 1, at 1.  On August 28, 2009, Martinez appeared before Judge Scott for an Arraignment and Detention Hearing.  See Bail Addendum at 1. Judge Scott heard oral argument and ordered that Martinez be detained until trial because Judge Scott found that Martinez was both a danger to the community and a flight risk.  See id.  Although technical problems kept the Court from listening to the recording of the detention hearing before the hearing on this motion and appeal, it has since listened to the recording.  Martinez appeals the decision of Judge Scott and asks this Court to release him.  See Motion at 1.  The United States opposes this motion and asks that the Court keep Martinez in custody pending trial.  See Response at 1, 7.

## LAW ON DETENTION AWAITING TRIAL

Title18 United States Code § 3145(b) states, in relevant part: "Review of a detention order. -- If a person is ordered detained by a magistrate . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order."  In United

States v. Cisneros, 328 F.3d 610 (10th Cir. 2003),  the United States Court of Appeals for the Tenth Circuit considered proper jurisdiction of a motion pursuant to 18 U.S.C. § 3145(a) and stated: "The motion should be considered and ruled upon in the first instance by a district judge in the court of original jurisdiction." United States v. Cisneros, 328 F.3d at 615.  The Tenth Circuit followed the guidance of the concurring opinion in United States v. Evans, 62 F.3d 1233 (9th Cir. 1995)(Wallace, C.J., concurring), which stated: "Only that district court [i.e. the district court with original jurisdiction over the offense] has the authority to review the magistrate judge's order." United States v. Cisneros, 328 F.3d at 615 (citing United States v. Evans, 62 F.3d at 1239 (Wallace, CJ., concurring)).  The Tenth Circuit explained that the court having original jurisdiction is "the district [court] in which the indictment charging [the defendant] was returned and in which the prosecution is pending." United States v. Cisneros, 328 F.3d at 615.  See United States v. Torres, 86 F.3d 1029, 1031 (11th Cir. 1996)(holding that United States, seeking review of a release order, must appeal to indicting jurisdiction).

A court generally cannot detain an accused unless there are no conditions or combinations of conditions that will reasonably assure the appearance of the person as required, and the safety of any other person and the community.  See 18 U.S.C. § 3142(b).  The United States bears the burden of showing that the defendant is either a flight risk or a danger to the community.  Dangerousness must be established by clear-and-convincing evidence.  See 18 U.S.C. § 3142(f)(2)(B)("The facts the judicial officer uses to support a finding pursuant to subsection (e) that no condition or combination of conditions will reasonably assure the safety of any other person and the community shall be supported by clear and convincing evidence.").  Risk of flight must be established by a preponderance of the evidence.  See United States v. Cisneros, 328 F.3d at 612.

## **ANALYSIS**

Martinez argues that he should be released pending trial.  He asserts that, after being released from state court on bond and before being arrested on federal charges, he had completely complied with the terms of his release, and he and his family were in regular contact with Martinez' attorneys.  See Motion ¶ 4, at 1.  He contends that the last criminal act of which the United States has evidence occurred over six years ago, indicating that he presents no present threat to the community.  See id. ¶ 7, at 2.  He further contends that he has no criminal record other than the present charges and has never been charged with a violent crime which might indicate that he is a danger to the community.  See id. ¶¶ 8-9, at 2.  Finally, he argues that his close relationship with his family, all of whom are located in Albuquerque, and his ties to the community demonstrate that he is not a danger and should be released.  See id. ¶¶ 10-11, at 2.

The United States argues that 18 U.S.C. § 3142(e)(3)(E) creates a rebuttable presumption that Martinez is a danger to the community and a flight-risk, and that the Court should consider the following in determining whether to detain Martinez:

a.   The nature and circumstances of the offense,

b.   The weight of the evidence against the person,

c.   The history and characteristics of the person, and

d.   The nature and seriousness of the danger to any person in the community that would be posed by [Martinez'] release.

Response ¶ 6, at 4 (citing 18 U.S.C. §§ 3142(e)(3)(E) and (g)).  The United States asserts that Martinez routinely engaged in dangerous and violent conduct, and that he has a criminal history which indicates he has an ongoing sexual interest in children and a willingness to act on that interest.  See Response ¶ 7, at 4-5.  The United States also asserts that the degree of harm that this abuse

inflicts on children and the duration over which Martinez engaged in such abuse counsel in favor of detention.  See id.  Further, the United States implies that the fact that Martinez records his sexual conduct with these children is an additional reason to find him to be a danger to the community.  See id.

The United States next attacks Martinez' representation that he has no criminal record.  It directs the Court to a prior deferred judgment for Unlawful Possession of Marijuana, as well as a 1986 conviction for Driving While Intoxicated.  See Response ¶ 9, at 5-6.  While the United States does not appear to argue that these convictions make Martinez more dangerous to the community, they do appear to insist that the Court should not consider his lack of a criminal record as a factor favoring release.

Regarding the risk that Martinez will flee if released pending trial, the United States argues that the Defendant has a valid passport, financial means, and a penchant for visiting foreign countries.  See Response ¶ 10, at 6.  While the United States acknowledges that Martinez already had an incentive to flee when he was released on bond pending the New Mexico state prosecution, it asserts that the stakes have increased with the filing of federal charges, further increasing the likelihood that Martinez will not show up for trial if released.  See id.

Finally, the United States opposes a conditional release, arguing that "[t]here is no condition of release or bail that can ensure [that Martinez] will not harm another child."  Response ¶ 10, at 6-7.  It asserts that the only way to protect the children of the community is detention.  See id.

In Martinez' Reply, he points to a number of "holes" in the United States arguments: (i) that the United States has no evidence that Martinez is not complying with the state court's orders; (ii) that it has shown no evidence of any wrongful conduct occurring since 2002; (iii) that it does not allege danger to John Doe, the victim of the underlying crime, which might occasion upon Martinez'

release; (iv) that the United States' implication that his ties to the community and his family have been diminished is wrong; (v) that Martinez is willing to surrender his passport to decrease the risk of flight; (vi) that the United States has not shown that Martinez is a dangerous person, but has shown "only a person who allegedly uses drugs in his home and owns a porn collection that includes home made videos from years ago;" and (vii) that the government presents no evidence, only argument, that Martinez is a flight risk.  Reply to USA's Response [Doc. 19] to Defendant's Appeal of Magistrate's Detention Order [Doc. 16] ¶¶ 1-7, at 1-3, filed September 22, 2009 (Doc. 24).

**I.      THE BURDEN IS ON MARTINEZ TO PRODUCE SOME EVIDENCE SHOWING THAT HE IS NOT A FLIGHT RISK NOR A DANGER TO THE COMMUNITY.**

Martinez argues in his Reply that the United States has provided no evidence that he is a flight risk or that he is a danger to the community.  While there is a presumption of detention in a case involving the charges at issue in this case, the burden remains on the United States to prove that the defendant is a danger to the community or a flight risk.  Section 3142 of Title 18 of the United States Code discusses how a court should decide whether to detain or release a criminal defendant during the period between indictment and trial on federal criminal charges.  See 18 U.S.C. § 3142; United States v. Villapudua-Quintero, 308 Fed. Appx. 272, 273 (10th Cir. 2009) ("Pretrial detention is governed by 18 U.S.C. § 3142."); United States v. Vorrice, 277 Fed. Appx. 762, 762 (10th Cir. 2008)("Pretrial release and detention are governed by 18 U.S.C. § 3142.").  It provides that one of four things may occur in the period between being charged with a federal offense and the trial: (i) the defendant may be released, with or without the requirement of an appearance bond; (ii) the defendant may be conditionally released; (iii) the defendant may be "temporarily detained to permit revocation of conditional release, deportation, or exclusion;" or (iv) the defendant may be detained until trial.  See 18 U.S.C. § 3142(a)(1)-(4).

### A.     TITLE 18, SECTION 3142(e)(3) PROVIDES FOR A PRESUMPTION OF DETENTION.

Ordinarily, the rule provides that "a defendant may be detained pending trial only if a judicial officer finds 'that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. Cisneros, 328 F.3d 610, 616-17 (10th Cir. 2003).  See United States v. Villapudua-Quintero, 308 Fed. Appx. at 273.  This rule implies a presumption in favor of release in most cases.  Furthermore, the burden of proving risk of flight and dangerousness to any person or the community is on the United States.  See id. at 616.  It must prove risk of flight by a preponderance of the evidence and/or prove dangerousness by clear-and-convincing evidence.  See id. (citing 18 U.S.C. § 3142(f)).  When the defendant is charged with certain crimes, however, a presumption might arise that the defendant is a flight risk and a danger to the community.  See 18 U.S.C. § 3142(e)(3); United States v. Villapudua-Quintero, 308 Fed. Appx. at 273 ("[T]he drug-and-firearm-offender presumption [of 18 U.S.C. § 3142(e)(3)(A)] applied and defendant was presumed to be both a flight risk and danger to the community."); United States v. Vorrice, 277 Fed. Appx. at 762 ("[Section] 3142(e) . . . provides . . . rebuttable presumptions favoring detention in certain circumstances.").  The crime of which Martinez is accused is one of those crimes:

> Subject to rebuttal by the person, it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer finds that there is probable cause to believe that the person committed--
>
> ***
>
> (E) an offense involving a minor victim under section . . . 2251. . . of this title.

18 U.S.C. § 3142(e)(3).  Martinez is charged with a violation of § 2251 of Title 18; therefore, if the Court finds that probable cause exists to believe Martinez committed the crimes charged, a

presumption will arise that Martinez is dangerous and a flight risk.

Once the presumption is established, Martinez has the burden to present some evidence that he is not a flight risk or a danger to the community.  See United States v. Villapudua-Quintero, 308 Fed. Appx. 272, 273 (10th Cir. 2009)("Once [a] presumption is invoked, the burden of production shifts to the defendant.")(quoting United States v. Stricklin, 932 F.2d 1353, 1354-55 (10th Cir.1991)).  "The defendant's burden of production is not heavy, but some evidence must be produced.  Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain."  United States v. Villapudua-Quintero, 308 Fed. Appx. at 273 (quoting United States v. Stricklin, 932 F.2d at 1355).

> **B.    THE UNITED STATES PROVIDED EVIDENCE SHOWING PROBABLE CAUSE TO BELIEVE MARTINEZ COMMITTED THE CRIMES ALLEGED, THUS RAISING THE PRESUMPTION OF DETENTION.**

At the hearing on Martinez' motion, the United States presented evidence that establishes probable cause to believe that Martinez committed the crimes of which he is accused.  First, the United States presented the testimony of Detective Hartsock, a deputy with the Bernalillo County sheriff's office.  See Hearing Tr. at 26:22-27:13 (Hartsock, Rees).[1]  Hartsock currently works in the special-victims unit, which handles crimes against children and sex crimes against victims of all ages.  See id. at 27:14-18 (Hartsock, Rees).  He has been a police officer for over six years and was involved in the investigation of Martinez, including the search of his home during which the police found the drugs and pornographic materials.  See id. at 27:19-24 (Hartsock, Rees).

---

[1] The Court's citation to the transcript refers to the court reporter's original, unedited version. The final transcript may contain slightly different page and/or line numbers.

Hartsock testified at length about the evidence found in Martinez' residence.[2]  In addition to the drugs, which are not the subject of this prosecution, the police seized numerous photographs and videos from Martinez' residence.  See id. at 28:9-29:19 (Hartsock, Rees).  Hartsock reviewed the photographs and watched the videos, and determined that approximately seventeen of the videos and twenty-nine of the photographs contained child pornography.  See id. at 29:7-23 (Hartsock, Rees).  The illicit "scenes" of these videos were generally between fifteen and forty-five minutes long, and each involved an individual in his forties or fifties, whom Hartsock identified as Martinez, and a minor.  See id. at 29:24-30:11 (Hartsock).  In the videos, Martinez would sometimes give the minor what appeared to be an alcoholic beverage or marijuana, and then Martinez would start performing sex acts on the minor.  See id. at 30:11-20 (Hartsock).  Martinez would generally perform oral sex on the child, and often would use his fingers and/or tongue to penetrate the child's anus.  See id. at 30:23-25 (Hartsock).  The majority of the videos feature the same victim: John Doe.  Hartsock testified that there was also a potential second victim -- an individual other than John Doe -- who appears in one of the videos.  See id. at 34:2-8 (Hartsock, Rees).

In one video, Hartsock testified, John Doe appears to be approximately seven years old.  See id. at 31:6-10 (Hartsock, Rees).  About this video, Hartsock testified at length, giving great detail as to its contents:

Q.  In these videos was there any behavior shown by Mr. Martinez where he forced

---

[2] Martinez has filed a motion to suppress much of the evidence that supports the United States' case.  It may therefore turn out that much of Hartsock's testimony and the other evidence upon which it is based is excluded from the trial of this matter.  Nevertheless, the Court will consider the evidence in determining whether to detain Martinez because "the rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at [a detention] hearing."  18 U.S.C. § 3142(f)(2)(B).  Moreover, even if the evidence is ultimately not admissible on guilt or innocence, the evidence remains relevant now on risk of danger and on risk of flight.

John Doe to engage in this sexual activity?

A.  Absolutely, yes.

Q.  Describe what you mean.

A.  The first one that comes to mind is the video where John Doe is approximately seven years old. [T]his is about a 30 minute long video.  Eventually John Doe is undressed completely you see that he's prepubescent, he's you know he doesn't have an erect penis during any part of the video.  Mr. Martinez is chasing him much around kind of in a playful manner . . . while he's clothe[d] and then starts to kind of hugs him from behind and the camera is set up so you're seeing the front of John Doe you see Mr. Martinez's hands wrap around him you see in part's hand go down over the genital area of John Doe and you can see John Doe start to squirm and say that he doesn't like this he doesn't like this.  And Mr. Martinez tells him it's okay it's okay and just starts rubbing his hand across John Doe's genitals.  Eventually he goes and sets him on the couch and starts to perform oral sex on John Doe on the couch.  John Doe is he starts to kind of pick his knees up you know kind of starts to clench himself inwards and Mr. Martinez is putting his legs back down with his hands telling him that it's okay.  This happens again later in the video during other of part of oral sex where John Doe was standing up and he's pulling his hip area away from Mr. Martinez and Mr. Martinez is telling him remember this feels good this doesn't hurt this doesn't all right it feels good.  And the whole time of John Doe is saying he doesn't want to do this.  I think at one point he even says are we almost done?  Then Mr. Martinez puts John Doe on the ground.  He asks him to hold the camcorder -- to hold it in his hand.  John Doe gets the cam but basically just points it up at the ceiling. Mr. Martinez asks hit to film he says film me and he doesn't want to he says no I don't want to he's pointing at the windows he's pointing of it everywhere but at himself or Mr. Martinez. You can hear Mr. Martinez take his take his pants off John Doe is completely naked at this point so you can hear pants being removed. You hear Mr. Martinez telling John Doe to touch it just come on and touch it.  John Doe is saying no I don't want to.  A minute or so goes by and you hear John Doe starts to tell Mr. Martinez please don't, I'm going to throw up I'm going to throw up please don't I'm going do throw up.

Q.  Does he stop?

A.  No.  Mr. Martinez says come on it's okay just put it in for a little bit and you can hear John Doe just continually say please please just don't do it.  I'm going to throw you and he says just wait until I'm older just wait until.

Q.  So by your description is it fair to say that Joe Doe is not a willing participant in this activity?

A.  Absolutely not.

-11-

Id. at 31:11-34:1 (Rees, Hartsock).  The Court is convinced that this unrebutted testimony establishes probable cause to believe that Martinez committed the crimes alleged.  The conduct described likely constitutes ". . . coerc[ing] [a] minor to engage in . . . , with the intent that such minor engage in, . . . sexually explicit conduct for the purpose of producing [a] visual depiction of such conduct," and it further is likely that the "visual depiction was produced . . . using materials that have been . . . shipped . . . in or affecting interstate . . . commerce."  18 U.S.C. § 2251(a). Further evidence submitted to the Court -- two of the actual videos seized from Martinez' residence -- further persuade the Court that probable cause exists.[3]  Because the Court finds that probable cause exists to believe that Martinez committed the crimes alleged, it shall presume that "no condition or combination of conditions will reasonably assure the appearance of [Martinez] as required and the safety of the community,"  18 U.S.C. § 3142(e)(3), and therefore shall order that Martinez be detained until his trial, 18 U.S.C. § 3142(e)(1), unless Martinez can provide sufficient reliable evidence to rebut that presumption.  See United States v. Villapudua-Quintero, 308 Fed. Appx. at 273.

## II.     MARTINEZ MET HIS BURDEN OF PRODUCTION IN THE FACE OF THE PRESUMPTION OF DETENTION.

Other than some facts of which the Court might take judicial notice, such as the temporal gap since the most recent sexual offense of which the United States has evidence, the only evidence that Martinez presented in support of his release was the testimony of his brother, Danny Martinez ("Danny").  Danny testified that he and Martinez had both moved to Albuquerque in 1969 and had lived in the area ever since.  See Hearing Tr. at 11:10-12:24 (Danny, Loman).  From 1984 until

---

[3] One of the two videos admitted into evidence is the one that Hartsock described and which description the Court has quoted.  Hartsock's testimony describes the contents of that video with reasonable accuracy.

immediately before Martinez' arrest, Danny saw Martinez every day because both of them worked for the family business.  See id. at 12:11-21 (Danny, Loman).  Outside of work, Danny and his family saw Martinez frequently.  See id. at 12:22-13:6 (Danny, Loman).  Danny testified that Martinez' relationship with his family did not change when the police initially searched Martinez' home, and, although Danny issued a press release distancing Martinez from the family business after he was arrested, this announcement did not change the nature or quality of the relationship of Martinez with the rest of the family.  See id. at 13:7-23 (Danny, Loman).  Danny also testified that it was Martinez' family that supplied the money for Martinez' attorneys fees and the $225,000.00 bond that the state court required for Martinez' release.  See id. at 14:22-15:2 (Danny, Loman).

Danny also testified that, to the best of his knowledge, Martinez has complied with the conditions of his release from custody pending trial on the state law charges.  Danny told the Court that, to his knowledge, Martinez had not been in possession of, nor consumed, drugs or alcohol since August 14, 2009.  See id. at 15:3-9.  He testified that he was not aware of Martinez associating with any street gangs or gang members, that he was not aware of any contact between Martinez and the victim, and that he was not aware of any contact between Martinez and any children.  See id. at 15:10-16:4 (Danny, Loman).  He also testified that, to the best of his knowledge, Martinez has no family or close friends outside of the state or outside of the country.  See id. at 16:17-21 (Danny, Loman).  Finally, he testified that he has never seen Martinez show any violent tendency toward anyone.  See id. at 16:22-24 (Danny, Loman).  If believed in its entirety, Danny's testimony would tend to show that Martinez has a good relationship with his family, has been complying with the conditions of his release on bond, and does not have violent tendencies.

Charlyn Rees, counsel for the United States, however, did an effective job of impeaching Danny's testimony.  Although one might assume that Danny , Martinez' brother, would know much

about Martinez and therefore would be competent to give reliable testimony about Martinez' conduct, Rees' cross-examination demonstrated that Danny did not know as much about his brother as he might have thought.   Notwithstanding seeing his brother on a daily basis at work, and frequently outside of work, Danny was not aware that Martinez had a drug-use problem before August 2009.  See id. at 18:3-6 (Danny, Rees).  Even though the family business, of which Danny is president, had a anti-drug policy, Danny was not aware that Martinez had been using cocaine, nor that he had cocaine on his person in July of 2009 when he was arrested on the premises of the family business.  See id. at 18:3-21 (Danny, Rees); id. at 41:12-24 (Hartsock, Rees).  He was also not aware that Martinez had received a deferred sentence for unlawful possession of marijuana in 2000.  See id. at 18:25-19:2 (Danny, Rees).  Particularly relevant to this case, Danny was not aware that Martinez had been sexually molesting an employee's son for over ten years, nor that Martinez had been producing videos of this conduct.  See id. at 21:12-21 (Danny, Rees).  Danny then conceded that, although he testified regarding Martinez' compliance with the conditions of his release on bond, "there's a lot of illegal activity [Danny was] not aware of."  Id. at 22:4-8 (Danny, Rees).

It appears to the Court that, although Martinez was in frequent contact with, and close proximity to, his brother and the rest of his family, Martinez was able to engage in substantial criminal conduct for years with his family none the wiser.  In light of this reality, Danny's testimony that he is unaware of any wrongful conduct by his brother has little weight -- but it is some evidence. Martinez then elicited similar testimony from Hartsock -- that Hartsock was unaware of any instance in which Martinez had violated the conditions of his release on bond pending the state court trial. See id. at 44:10-19 (Hartsock, Loman).  There was no testimony, however, that Hartsock was assigned to monitor Martinez or made any effort to ensure that Martinez was complying with the conditions of his release from state custody.  Hartsock's lack of testimony that Martinez had violated

those conditions, along with his other evidence, meets Martinez' burden of production, but Hartsock's testimony alone does not overcome the presumption in favor of detention that 18 U.S.C. § 3142(e)(3)(E) creates.  Nor is it significant that the United States has produced no evidence of any crimes on the § 3142(e)(3)(E) list that occurred later than 2002 or 2003.  The statute does not provide that the crime for which Martinez is being detained need be recent, nor does it place on the United States the burden of proving a recent offense to justify detention.[4]  Nevertheless, although his evidence is weak, Martinez has met his burden to produce some evidence showing he is not a danger to the community and is not a flight risk.

## III.   THE FACTORS OF 18 U.S.C. § 3142(g) WEIGH IN FAVOR OF DETAINING MARTINEZ.

Even with the presumption in favor of detaining Martinez, the burden remains always with the United States to prove that Martinez would constitute a flight risk or a danger to the community if he were released pending trial.  See United States v. Villapudua-Quintero, 308 Fed. Appx. at 273 ("Once [a] presumption is invoked, the burden of production shifts to the defendant," but "the

---

[4] Martinez' counsel commented at the hearing that he believed that the fact that the victim is no longer a minor, and is now married and works at the Martinez family business, rebuts the presumption.  See Hearing Tr. at 7:8-17 (Hall).  The Court is not convinced, however, that such evidence overcomes the presumption.  Absent from the statute is any proviso which states that if the victim of the alleged crime is no longer a minor, the presumption of detention is not warranted.  On the contrary, most special rules regulating crimes involving minors are premised on the belief that child sexual abuse is a crime that tends to have a high rate of recidivism.  See 2 C. Mueller & L. Kirkpatrick, Federal Evidence § 4:85 (3d ed. 2003) (describing recidivism as one basis behind Congress's enactment of rules 413, 414, and 415 of the Federal Rules of Evidence); Rivera v. Rivera, 262 F. Supp. 2d 1217, 1226 (D. Kan. 2003) (history of molestation is "exceptionally probative" in showing "unusual disposition" that "does not exist in ordinary people").  The Court believes that the probability of recidivism -- that the defendant might commit similar crimes on other children -- was one of Congress' concerns which prompted the presumption of detention in 18 U.S.C. § 3142(e)(3)(E).  That the John Doe in this case is ostensibly older and may be safer than a young child does not quell these concerns. Furthermore, Hartsock testified that, in his discussions with John Doe, John admitted that he was still scared of Martinez. See Hearing Tr. at 47:1-5 (Hartsock, Loman).

burden of persuasion regarding risk-of-flight and danger to the community always remains with the government.")(quoting United States v. Stricklin, 932 F.2d at 1354-55). The United States argues that he is both a flight risk and a danger to the community. Martinez argues that the United States has not provided sufficient evidence to prove that he is either.

Subsection 3142(g) of Title 18 of the United States Code lists the factors that a court shall consider when determining "whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(g). Those factors are:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . or involves a minor victim or a controlled substance . . .;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including –

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g). The second element weighs heavily in favor of detention. The evidence against Martinez, if admissible, strongly supports a finding of guilt. The weight of the evidence is thus against Martinez. Martinez' counsel conceded that this element weighs in favor of the United States at the hearing on this motion. See Hearing Tr. at 2:19-3:3 (Hall); id. at 55:20-23 (Hall).

The Court believes that the first element likewise weighs against release. Martinez' crime

involves a minor victim, which is something of which the detention statute instructs the Court to take notice.  Furthermore, the circumstances of the offense are particularly troubling to the Court. The videos depict an older man using his position of authority over a physically smaller, emotionally immature, and impressionable child to pressure that child to perform sex acts.  John Doe repeatedly asked that Martinez stop, indicated to Martinez that he wanted to leave, and did not want to engage in the acts that Martinez was forcing upon him.  While it did not appear that Martinez was inflicting physical injury on John Doe, it was clear that John Doe was not a willing participant and wanted the encounters to end as quickly as possible.  Also, Martinez used physical force to get John Doe and his body to do acts that John Doe did not want to do.  The videos shows that when John Doe was young, Martinez apparently enticed John Doe with television and toys.  When John Doe got older, Martinez used pornography, liquor, and marijuana to make John Doe docile, and to persuade John Doe to allow Martinez to engage in sex acts with him.  The possibility that Martinez might engage another child in this abuse -- what he referred to as "mentoring" -- persuades the Court that Martinez would be a danger to society if released.

The physical location of Martinez' residence and the possibility of using an electronic bracelet to monitor Martinez' location does not convince the Court that conditional release would adequately protect the community.  The Court has not been shown that Martinez could not lure a child, perhaps a neighbor, onto his property with the police and the Court none the wiser.  The fourth factor therefore also weighs in favor of detention.  If Martinez were released, he could potentially commit these crimes again, on a different child.  The Court and Congress both consider this crime to be serious, and believe that exploiting children to create child pornography creates a danger to the community and the individual children.  The Court acknowledges that the United States' evidence does not show that Martinez has committed these crimes recently -- rather, it appears that

-17-

the evidence is of crimes occurring, at the latest, in 2002 or 2003, <u>see</u> Hearing Tr. at 45:7-19 (Hartsock, Loman), but it considers this small comfort in light of the seriousness of the crime and the degree of harm it inflicts upon its victim.

Finally, the third element -- the history and characteristics of the person -- also weighs in favor of detention. The Court is concerned primarily by Martinez' mental condition. The video evidence demonstrates that Martinez is an individual with an ongoing sexual interest in children and a willingness to act on such interest. He not only sexually abuses children, but he memorializes it in photographs and videos for his later enjoyment. He was able to commit these crimes undetected for a period of over 10 years and, when confronted with his own conduct, was without remorse. While Martinez had ties to the community, and still apparently has strong ties with his family, the news of the charges leveled against him have placed some distance between him and his support community. Furthermore, those ties to his family and community did not keep Martinez from committing these sexual acts against the young child of an employee, and the Court is skeptical that these now-damaged ties will provide the necessary protection to the general-population community going forward. Finally, the evidence seized in his home and the testimony of Hartsock shows that Martinez has a history of drug use -- both marijuana and cocaine.

In addition to the statutory factors, the Tenth Circuit has advised that, even where the presumption in favor of detention is rebutted, the fact that Congress saw fit to create the presumption for the crimes of which the defendant is accused should be considered as a factor in favor of detention. <u>See</u> <u>United States v. Villapudua-Quintero</u>, 308 Fed. Appx. at 273 ("Even if a defendant's burden of production is met, the presumption remains a factor for consideration by the district court in determining whether to release or detain.")(quoting <u>United States v. Stricklin</u>, 932 F.2d at 1355). Considering the statutory factors and the additional factor that the presumption in favor of detention

arose in this case, the Court concludes that there is clear-and-convincing evidence that Martinez would pose a danger to the community if released.

The Court does not believe that the release conditions which Martinez proposes mitigates this risk of danger.  Placing Martinez back in his home, where he committed a significant portion of the alleged crimes, does not appear to decrease this risk.  Moreover, the ankle bracelet does not appear to address the danger concern.  At the hearing, the Court mentioned the possibility of placing Martinez in a half-way house rather than returning him to the other side of the Sandia mountains, where his home is located.  The United States persuaded the Court, however, that such an arrangement might provide even less protection to the community than sending him to his home under house arrest.  Because Martinez' crimes were apparently not limited to a relationship with John Doe, the Court has no assurance he would not attempt to entice another young boy from his temporary home in downtown Albuquerque.

The risk that Martinez might flee if he were released also concerns the Court.  Martinez has substantial assets and continues to receive a monthly salary from his family's business.  He also has a penchant for travel to foreign countries and a passport.  On the other hand, Martinez has offered to surrender his passport pending the trial of this case and has posted a $225,000 bond for his release from state custody that he would forfeit if he were to flee.  Martinez has not yet fled in the face of his substantial state-law criminal charges.  Martinez' compliance with state authorities does not sufficiently assure the Court, however, the that there is adequate assurance that Martinez will not flee.  First, the testimony was that Martinez' family posted the $225,000 bond, and none of Martinez' assets secure that bond.  While Martinez would be at risk of losing his current stream of income and upsetting his family if he were to fail to appear for trial, he would lose nothing of his own.  Further, while Martinez has not fled in the face of his state charges, the federal charges

substantially increase the stakes and force Martinez to defend himself in two trials, increasing the risk of a guilty verdict.  Finally, although forfeiting his passport would make international travel more difficult for Martinez, there exists no solid wall between the United States and its two closest neighbors, and individuals are frequently able to slip through those borders undetected.  While an electronic bracelet mitigates the flight risk some, realistically, a detained defendant can get going long before the pretrial services and the United States Marshals realize he has fled, putting great distance between the defendant and the police.  The Court therefore finds, by a preponderance of the evidence, that there are no "conditions of release that will reasonably assure the appearance of [Martinez] as required," and will deny his motion for release.

**IT IS ORDERED** that the Defendant's Appeal of Detention Order and Motion for Release is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Gregory J. Fouratt
   United States Attorney
Presiliano Torrez
Charlyn E. Rees
Stephen R. Kotz
   Assistant United States Attorneys
Albuquerque, New Mexico

 *Attorneys for the Plaintiff*

Brad D. Hall
Law Offices of Brad D. Hall
Albuquerque, New Mexico

-- and --

-20-

Sam Bregman
Eric Loman
The Bregman Law Firm, PC
Albuquerque, New Mexico

    *Attorneys for the Defendant*